**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rhondine Melendez, individually and on behalf of all others similarly situated, | ) )  Case No.: 1:23-cv-08074-SJB |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| The Complete Tile Collection, LLC, | ) ) ) |
| Defendant. | ) ) ) |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT THE COMPLETE TILE COLLECTION, LLC'S
MOTION TO DISMISS**</u>

**STEIN SAKS, PLLC**

*/s/ Kenneth Willard*
Kenneth Willard, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
kwillard@steinsakslegal.com

# TABLE OF CONTENTS

Table of Authorities …………………………………………………...... iii

I. Introduction ………………………………………………….……….. 1

II. Factual Background …………………………………………………... 1

III. Standard of Review ………………………………………………… 3

IV. Legal Argument …………………………………………………….. 4

    A. DEFENDANT HAS FAILED TO MEET ITS HIGH BURDEN IN ESTABLISHING THAT PLAINTIFF'S CLAIMS ARE MOOT ……………………………………………………… 4

    B. PLAINTIFF'S DIFFICULTIES IN NAVIGATING THE WEBSITE AND HER INTEREST IN RETURNING ESTABLISH INJURY-IN-FACT ……………………………….. 11

        i. Article III Standing in the Context of the ADA …………. 11

        ii. Plaintiff Has Adequately Alleged Past Injury …………… 12

        iii. Plaintiff Has Established the Reasonable Inference that Discriminatory Treatment Will Continue ……………….. 15

        iv. Plaintiff Has Established Intent to Return, the Third and Final *Kreisler* Element …………………………………... 17

    C. PLAINTIFF'S NYCHRL CLAIMS SURVIVE ……………..... 25

V. CONCLUSION ……………………………………………………. 25

**Table of Authorities**

**Supreme Court Opinions**

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130 (1992) ............................................................ 11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................................................................................... 11

**U.S. Constitution**

Article III of the U.S. Constitution ...................................................................... 11

**Second Circuit Opinions**

*Am. Council of the Blind of N.Y., Inc. v. City of N.Y.*,
    495 F. Supp. 3d 211 (S.D.N.Y. 2020) ............................................................... 7

*Angeles v. Grace Prods., No. 20-cv-10167*
    (AJN), 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sep. 23, 2021) ................... 8, 12, 12-13, 18, 20, 21

*Bautz v. ARS Nat'l Servs.*,
    226 F. Supp. 3d 131 (E.D.N.Y. 2016) ............................................................. 11

*Brown v. Mermaid Plaza Assocs. LLC, No. 13-cv-00760*
    (AMD) (CLP), 2018 U.S. Dist. LEXIS 132364 (E.D.N.Y. Mar. 8, 2018) ......... 14

*Calcano v. Swarovski N. Am. Ltd.*,
    36 F.4th 68 (2d Cir. 2022) ......................................................... 17, 19, 20, 23-24, 24

*Camacho v. Vanderbilt Univ.*,
    2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ................................. 13

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ............................................................................... 3

*Chalas v. Barlean's Organic Oils, LLC, No. 22 Civ 04178*
    (CM), 2022 U.S. Dist. LEXIS 211816 (S.D.N.Y. Nov. 22, 2022) ................... 13, 18, 20

*Cooper v. U.S. Postal Serv.*,
    577 F.3d 479 (2d Cir. 2009) ............................................................................ 11

*Davis v. Wild Friends Foods, Inc., No. 22-cv-04244*
    (LJL), 2023 U.S. Dist. LEXIS 115542 (S.D.N.Y. July 5, 2023) .......... 14, 15, 16, 18-19, 21, 20, 24, 25

*Dawkins v. Schott NYC Corp., No. 22-CV-3617*
    (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 (E.D.N.Y. Sep. 26, 2023) ....... 22, 22-23, 23

*De La Rosa v. 600 Broadway Partners, LLC*,
    175 F. Supp. 3d 191 (S.D.N.Y. 2016) ............................................................ 5, 7

*Diaz v. Kroger Co.*,
    2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. June 4, 2019) .................................. 9, 10

*In re Ditech Holding Corp.*, No. 19-10412
   (JLG), 2023 Bankr. LEXIS 2415 (Bankr. S.D.N.Y. Sep. 29, 2023) ................... 8

*Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286
   (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913 (S.D.N.Y. Aug. 14, 2023) ................... 13-14

*Farez-Espinoza v. Napolitano*,
   2009 U.S. Dist. LEXIS 35392 (S.D.N.Y. Apr. 27, 2009) ................... 10, 16-17

*Gropper v. Fine Arts Hous., Inc.*,
   12 F. Supp. 3d 664 (S.D.N.Y. 2014) ................... 5

*Guglielmo v. Neb. Furniture Mart, Inc.*,
   2020 U.S. Dist. LEXIS 238707 (S.D.N.Y. Dec. 18, 2020) ................... 9

*Hecht v. Magnanni Inc.*, No. 1:20-cv-05316
   (MKV), 2022 U.S. Dist. LEXIS 60836 (S.D.N.Y. Mar. 31, 2022) ................... 4, 5

*J.S. ex rel. N.S. v. Attica Central Schools*,
   386 F.3d 107 (2d Cir. 2004) ................... 4, 6

*Jobie O. v. Spitzer*,
   2007 U.S. Dist. LEXIS 91460 (S.D.N.Y. Dec. 5, 2007) ................... 5

*Katz v. Donna Karan Co., L.L.C.*,
   872 F.3d 114 (2d Cir. 2017) ................... 3

*Kreisler v. Second Ave. Diner Corp.*,
   731 F.3d 184 (2d Cir. 2013) ................... 12

*Laufer v. Laxmi & Sons, LLC*, No. 1:
   19-CV-1501 (BKS/ML), 2020 U.S. Dist. LEXIS 216752 (N.D.N.Y. Nov. 19, 2020) ................... 11

*Loadholt v. ShirtSpace*, No. 22-CV-02870
   (ALC), 2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar. 6, 2023) ................... 18

*Logerfo v. Cty. of Nassau*, No. 17-cv-00010
   (JMA) (AYS), 2021 U.S. Dist. LEXIS 269440 (E.D.N.Y. Mar. 11, 2021) ................... 7

*Maddy v. Life Time, Inc.*, No. 22-cv-5007
   (LJL), 2023 U.S. Dist. LEXIS 115503 (S.D.N.Y. July 5, 2023) ................... 19, 20, 24-25

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ................... 3

*Oparaji v. Mun. Credit Union*, No. 19-CV-4034
   (JPC)(SN), 2020 U.S. Dist. LEXIS 242211 (S.D.N.Y. Dec. 21, 2020) ................... 4

*Quezada v. U.S. Wings, Inc.*,
   2021 U.S. Dist. LEXIS 234057 (S.D.N.Y. Dec. 7, 2021) ................... 8

*Samele v. Zucker*,
   324 F. Supp. 3d 313 (E.D.N.Y. 2018) ................... 16

*Sanchez v. NutCo, Inc., No. 20-CV-10107*
(JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022) ........................................... 16, 18, 20

*Tavarez v. Moo Organic Chocolates, LLC,*
641 F. Supp. 3d 76 (S.D.N.Y. 2022) ................................................ 15-16, 17-18, 21, 23, 24

*Walters v. Fischer Skis U.S., LLC, No. 6:21-CV-1115*
(LEK/ATB), 2022 U.S. Dist. LEXIS 142148 (N.D.N.Y. Aug. 10, 2022) ......................................... 13

*Winegard v. Golftec Intellectual Prop. LLC, No. 23-cv-1244*
(BMC), 2023 U.S. Dist. LEXIS 92840 (E.D.N.Y. May 26, 2023) ............................................... 21, 22

**Federal Court Opinions**

*Dashnaktsutyun v. Armenian Revolutionary Fed'n WUSA, Inc., No. CV 21-5594 DSF*
(RAOx), 2021 U.S. Dist. LEXIS 227444 (C.D. Cal. Oct. 25, 2021) .................................................. 8

*Longhini v. W. 97 Corp., No. 1:15-cv-22874-UU,*
2015 U.S. Dist. LEXIS 188271 (S.D. Fla. Nov. 20, 2015) .................................................. 9

**United States Code**

42 U.S.C. § 12182 ........................................................................................................ 1

**State Cases**

*Cabrera v. City of N.Y.,*
2014 NY Slip Op 30533(U) (Sup. Ct.) .................................................................................. 25

*Pustilnik v. Battery Park City Auth.,*
2021 NY Slip Op 21087, 71 Misc. 3d 1058, 147 N.Y.S.3d 357 (Sup. Ct.) ....................................... 25

**Rules**

Rule 8 ............................................................................................................... 13
Rule 12 ........................................................................................................... 1, 2, 3

**Other**

N.Y.C. Admin. Code § 8-101 .............................................................................................. 1

## I.  <u>INTRODUCTION</u>

Plaintiff Rhondine Melendez ("Melendez") brings her claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*  Defendant The Complete Tile Collection, LLC ("CTC") moves to dismiss these claims under Rule 12(b)(1) of Fed. R. Civ. P. Defendant argues that Plaintiff has failed to establish Article III standing and that Plaintiff's claims are mooted, on the basis of a declaration from Defendant averring that the declarant, a visually impaired person, had no trouble using the website, www.completetile.com (the "Website"), and an as-yet unproduced video showing same.  As will be discussed below, these arguments have no merit.

Plaintiff has clearly alleged the basis for her interest in the product at issue, "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic," going into detail about the genesis of her need for the floor tile at issue – she wanted to repair her bathroom floor which has moldy tiles – and the need for a specific type of tile for a humid environment.  Moreover, the declarations provided by Defendant prove nothing other than that the Website might be blind-user friendly today.  They say very little, if anything, about the remediation steps Defendant took to bring the Website into compliance with the ADA, other than retaining a third-party vendor Userway.  Similarly, Defendant's averred commitment to future compliance is stated in flatly conclusory terms, which is insufficient to establish mootness. Defendant has therefore failed to meet the high bar for mootness in the Second Circuit, which falls squarely under the voluntary cessation doctrine.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff is a blind and visually impaired person who must use screen reader technology to navigate websites and is proficient in the use of NVDA screen readers. Dkt. # 1, ¶¶ 17, 39. Defendant owns and operates the Website which is an online retailer for a wide variety of wall and floor tiles. *Id.* at ¶¶ 18, 23, 24.

Plaintiff found the Website through an Instagram search. Dkt. # 1, ¶ 23. Plaintiff was interested in purchasing the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic." *Id.* at ¶ 21. She "wanted to repair the floor in her bathroom" and was specifically "looking for high-quality mosaic tiles appropriate for humid environments to replace the [bathroom tiles] she currently has that are moldy." *Id.* at ¶¶ 22. Plaintiff found the Website particularly appealing because it offers "wall and floor tiles in various materials, designs and finishes" as well as different spaces, including bathrooms, kitchens, living areas, and outdoor spaces." *Id.* at ¶ 23.

Unfortunately, on October 19, 2023 and October 20, 2023, when Plaintiff visited the Website, she was unable to complete a purchase of the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic" because of the difficulties Plaintiff encountered in navigating the Website with her NVDA screen reader. Dkt. # 1, ¶¶ 20, 25. Defendant's failure to build and maintain the Website in a manner compliant with the ADA directly led to injuries sustained by Plaintiff as a result of this discrimination. *Id.* at ¶ 28.

Plaintiff's specific injuries came about as a result of the access barriers she encountered on the Website. Dkt. # 1, ¶¶ 25, 28, 42, 43. These access barriers include "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse," in addition to "a host of broken hyperlinks," which prevented Plaintiff from freely navigating back

to the live Website after reaching a dead end on the information superhighway.  *Id.* at ¶¶ 43, 44.

These access barriers prevented Plaintiff from using the Website as sighted users do, and

specifically prevented Plaintiff from completing a purchase of "Ehysquare White Whisp Dolomiti

Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic."  *Id.* at ¶¶ 25,

45.  If and when the Website is remediated, Plaintiff intends to return to the Website to complete

a purchase of "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed

Visual Dimensions Marble Mosaic."  Dkt. # 1, ¶ 29.

## III.   <u>STANDARD OF REVIEW</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)(citing Fed. R. Civ. P. 12(b)(1)).  "A plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence

that it exists."  *Makarova*, 201 F.3d at 113.  The Second Circuit draws a distinction between two

types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial challenges and fact-

based challenges.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also*

*Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114, 119 (2d Cir. 2017).  A facial challenge is "based

solely on the allegations of the complaint or the complaint and exhibits attached to it."  *Carter*,

822 F.3d at 56.  Under a facial challenge, a plaintiff must "allege[s] facts that affirmatively and

plausibly suggest that [the plaintiff] has standing to sue."  822 F.3d at 56.  In order to make that

determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable

inferences in favor of the plaintiff."  *Id.* at 57 (citation omitted).

By contrast, a factual challenge – challenging the actual fact of the court's jurisdiction

through the introduction of extrinsic evidence – "does not presume the truth of the plaintiff's

claims of jurisdiction, 'rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts.'" *Oparaji v. Mun. Credit Union*, No. 19-CV-4034 (JPC)(SN), 2020 U.S. Dist. LEXIS 242211, at *6 (S.D.N.Y. Dec. 21, 2020)(quoting *Guadagno v. Wallack Ader Leviathan Assoc.'s*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996), *aff'd* 125 F.3d 844 (2d Cir. 1997))[1]. Although a court may consider extrinsic evidence in determining the fact of its own jurisdiction, the court "may not rely on conclusory … statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).

## IV.  **LEGAL ARGUMENT**

### A.  **DEFENDANT HAS FAILED TO MEET ITS HIGH BURDEN IN ESTABLISHING THAT PLAINTIFF'S CLAIMS ARE MOOT**

Defendant offers the Declaration of Denes Petoe ("Petoe Decl.", Chief Executive Officer of CTC, and the Declaration of Robert Kingett ("Kingett Decl."), who is blind and uses a screen reader. Defendant argues that both of these declarations prove that Plaintiff's claims are moot. While the declarations address some aspects of mootness, they are critically deficient in other areas such that Defendant has failed to meet the high bar for establishing mootness in this jurisdiction.

"It is black-letter law that a 'voluntary cessation of challenged conduct does not ordinarily render a case moot.'" *Hecht v. Magnanni Inc.*, No. 1:20-cv-05316 (MKV), 2022 U.S. Dist. LEXIS 60836, at *8 (S.D.N.Y. Mar. 31, 2022)(quoting *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012))(citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)). "Rather, Plaintiff's request for injunctive relief under the ADA will only be deemed moot if the Defendant meets the 'formidable burden'

---

[1] Defendant mischaracterizes the standard on a factual attack as prohibiting the assumption of truth of *all* factual allegations. Clearly, that limitation only applies to claims of jurisdiction in the Complaint. *See Oparaji*, No. 19-CV-4034 (JPC)(SN), 2020 U.S. Dist. LEXIS 242211 at *6.

of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Hecht*, No. 1:20-cv-05316 (MKV), 2022 U.S. Dist. LEXIS 60836 at *8-9.

The most glaring omission in the Petoe Decl. and the Kingett Decl. is the date the Website was remediated. *See generally* Dkt. # 13-1; *see also generally* Dkt. # 13-2. This is a critical deficiency that prevents Defendant from proving that it remediated the Website in good faith prior to the filing of Plaintiff's lawsuit, not in response to litigation. "'[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.'" *Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 669 (S.D.N.Y. 2014)(quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727, 184 L. Ed. 2d 553 (2013)). "'Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016)(quoting *Already, LLC*, 133 S. Ct. at 727); *see also Jobie O. v. Spitzer*, 2007 U.S. Dist. LEXIS 91460, at *13 (S.D.N.Y. Dec. 5, 2007)("The voluntary cessation exception to the mootness doctrine stems from the principle that a party should not be able to alter its behavior or practices temporarily in order to evade judicial review or manipulate the jurisdiction of the courts."). Defendant has not met its "formidable burden" of proving that it is absolutely certain that is conduct cannot reasonably be expected to recur, where Defendant omits critical information about when the Website was actually remediated.

Defendant attempts to moderate this deficiency by averring, "Prior to the inception of this lawsuit and the alleged time Plaintiff claims she reviewed the Website, Complete Tile has undertaken to comply with the Website Content Accessibility Guidelines ('WCAG') to make the Website as accessible and compliant with WCAG 2.0/2.1 standards as possible." *See* Dkt. # 13-1, ¶ 7. But other than this conclusory declaration, no other information is given about the

timeframe in which Defendant tried to have the Website remediated "prior to the inception of this lawsuit," or what efforts were undertaken. Conclusory statements in a declaration or affidavit cannot be considered by a district court when deciding a 12(b)(1) motion. *J.S. ex rel. N.S.*, 386 F.3d at 110.

Moreover, in the very next paragraph, Mr. Petoe concedes that Defendant did not retain Userway until after the lawsuit was filed. *See* Dkt. # 13-1, ₱ 8 ("Complete Tile retained a third-party company named Userway *after* the lawsuit was filed to use its product and services to ensure visually impaired individuals can use the Website.")(emphasis added). Compared to the "prior to" language in the previous paragraph, this averment contains much more factual information which is therefore not only appropriate for consideration by the Court, but specifically contradicts Mr. Petoe's assertion that Defendant conducted remediation efforts on the Website "prior to the inception of this lawsuit."

Furthermore, Mr. Kingett – who was hired by Defendant to conduct an informal review of the Website as a "totally blind" person who uses screen reader technology in his "daily life" – only conducted his review of the Website on December 4, 2023, barely more than a month after Plaintiff filed her lawsuit and just over two weeks before Defendant filed the instant motion. *See* Dkt. # 13-2, ₱ 2, 3, 7; *see also* Dkt. # 1; *see also* Dkt. # 13. Thus, it is apparent from the Petoe Decl. and Kingett Decl. that Defendant never made any effort to remediate the Website, if any effort was made at all, prior to the inception of the lawsuit, and virtually all of its efforts, if not all of them, were made after the lawsuit had been filed, in anticipation of filing the instant motion to get this action dismissed.

"Courts have recognized that the suspicious timing of a party's voluntary cessation weighs against finding mootness … because such timing suggests a litigation-driven motivation, as

opposed to an authentic, durable commitment on the part of the defendant to mend its ways."

*Logerfo v. Cty. of Nassau*, No. 17-cv-00010 (JMA) (AYS), 2021 U.S. Dist. LEXIS 269440, at *9-10 (E.D.N.Y. Mar. 11, 2021)(collecting cases); *see also Am. Council of the Blind of N.Y., Inc. v. City of N.Y.*, 495 F. Supp. 3d 211, 248 (S.D.N.Y. 2020)("Here, the City's adoption of the new policy only when it was facing a formidable motion for summary judgment leaves it far from 'absolutely clear' that the City would not abandon its newly announced commitment with respect to APS were plaintiffs' claims denied as moot.").

Even though the actual date of remediation is uncertain, the date of Mr. Kingett's review and Mr. Petoe's statements evoke the specter of the voluntary cessation doctrine inasmuch as they suggest that Defendant was motivated by a desire to avoid litigation, and remediated the Website after it had been sued for that express purpose, not out of a sincere effort to be compliant with the ADA. This Court cannot be absolutely certain that the challenged conduct cannot reasonably be expected to recur. In all likelihood, given the date of Mr. Kingett's review and Mr. Petoe's explicit statement that Userway was not hired until after the litigation had started, Defendant's actions *will* recur again. That places this case squarely under the protections of the voluntary cessation doctrine. Finding mootness under these circumstances would allow Defendant to "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *De La Rosa*, 175 F. Supp. 3d at 201.

The Petoe Decl. and Kingett Decl. are deficient in other ways. The Petoe Decl. states that it hired Userway, a third-party vendor, to remediate the Website in accordance with WCAG guidelines. *See* Dkt. # 13-1, ⁋ 8. Like another third-party ADA compliance, accessiBe, Userway is an overlay widget that only superficially addresses site concerns in relation to ADA compliance, and oftentimes makes them worse. *See* https://nfb.org/resources/speeches-and-

[reports/resolutions/2021-resolutions#04](reports/resolutions/2021-resolutions#04), last visited January 25, 2024, *Resolution 2021-04: Regarding the Use of Overlays to Make Websites Accessible to the Blind*, National Federation of the Bind ("NFB")(condemning the use of accessiBe and Userway as superficial overlays that fail to address the underlying compliance issues with a website and oftentimes make them worse).[2]

accessiBe has been rejected at least twice in this jurisdiction as a basis for mooting a case. *See Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *8-9 (S.D.N.Y. Sep. 23, 2021)(finding that Defendant had failed to meet "its 'formidable' burden of demonstrating that it is 'absolutely clear' that the website has been brought into compliance and will remain as so" based on the use of the accessiBe widget when the plaintiff had introduced countervailing evidence from an expert testifying to ongoing problems with the website); *see also Quezada v. U.S. Wings, Inc.*, 2021 U.S. Dist. LEXIS 234057 (S.D.N.Y. Dec. 7, 2021). Userway, as an overlay, should also be rejected.

Even more problematic is the fact that neither Mr. Petoe nor Mr. Kingett is an expert at ADA compliance. In the Kingett Decl., Mr. Kingett does not hold himself out as a third-party vendor specializing in remediation of ADA websites. The sole basis for Mr. Kingett's expertise is apparently that he "use[s] screen reader technology in [his] daily life." *See* Dkt. # 13-1, ⁋ 3. For his part, Mr. Petoe is only the CEO. Neither party has the qualifications necessary to provide a

---

[2] Plaintiff requests that this Court take judicial notice of the NFB's Resolution 2021-04: Regarding the Use of Overlays to Make Websites Accessible to the Blind. *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2023 Bankr. LEXIS 2415, at *3 n.9 (Bankr. S.D.N.Y. Sep. 29, 2023)("The Court can properly take judicial notice of matters of public record.")(collecting cases). This Court can take judicial notice of the NFB's 2021-24 resolution not for the specific factual findings that were made by the NFB, which were many, but for the fact that the NFB, one of the premier national organizations representing the interests of the blind and visually impaired in this country, saw fit to make a public condemnation of accessiBe and Userway as effective methods of ADA compliance. *See e.g. Dashnaktsutyun v. Armenian Revolutionary Fed'n WUSA, Inc.*, No. CV 21-5594 DSF (RAOx), 2021 U.S. Dist. LEXIS 227444, at *4 (C.D. Cal. Oct. 25, 2021)("The Court takes judicial notice of the *existence* of [state court filings], not the truth of the allegations or the merits of the arguments asserted in those documents.")(emphasis in original). This tends to support Plaintiff's arguments that in fact Userway is ineffective at remediating the Website in accordance with WCAG 2.1 Level AA.

professional assessment of whether the Website is compliant with WCAG 2.1 Level AA. *See Longhini v. W. 97 Corp.*, No. 1:15-cv-22874-UU, 2015 U.S. Dist. LEXIS 188271, at *6 (S.D. Fla. Nov. 20, 2015)("Moreover, Defendant's president is not an expert on ADA-compliance, and her photographs of the facility, although persuasive, do not definitively demonstrate that the facility is actually ADA-compliant. Therefore, it is not clear that this action is moot.").

Additionally, the Petoe Decl. is scant on detail concerning the steps *Defendant* took in assessing the state of compliance of the Website and subsequent efforts to remediate it. Courts have required substantially more information regarding the specific steps that a defendant took to remediate a website before finding a case is moot. *See e.g. Guglielmo v. Neb. Furniture Mart, Inc.*, 2020 U.S. Dist. LEXIS 238707, at *17-18 (S.D.N.Y. Dec. 18, 2020)(noting that the defendant's declaration provided a detailed account of the steps it took to remediate the website, including an audit performed, remediation of the website that was accomplished with very few instances of deficiencies afterward, and a complete redesign which will be a "central aspect" of the website going forward); *see also Diaz v. Kroger Co.*, 2019 U.S. Dist. LEXIS 93177, at *8-9, *12 (S.D.N.Y. June 4, 2019)(finding ADA claim moot where the defendant provided an affidavit attesting that "(i) Defendant undertook compliance with the WCAG standards before the lawsuit was filed; (ii) the Website is today compliant with those standards; (iii) he personally confirmed that the specific barriers to access identified in Plaintiff's initial and amended complaints 'have been remedied and that no such barriers to access, as alleged, still exist with the website'; (iv) Defendant has no intention of undoing those changes or regressing to non-compliance with the ADA; and (v) Defendant commits 'to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible.'"). Simply put, the Petoe Decl.

provides none of the detail surrounding Defendant's remediation of the Website for this Court to be absolutely certain that the challenged conduct cannot reasonably be expected to recur.

Finally, the Petoe Decl. does not provide any meaningful statement regarding future compliance, another critical factor in determining whether Defendant is likely to continue its challenged conduct. The only statement Mr. Petoe makes is a double negative. *See* Dkt. # 13-1, ₱ 8 ("Complete Tile has no intention of not contracting with Userway to monitor and audit its website in the future."). This is hardly an expression of commitment necessary to assure this Court that it is absolutely certain that Defendant's conduct cannot be reasonably expected to recur. *See cf. Diaz*, 2019 U.S. Dist. LEXIS 93177 at *11 (finding ADA claim moot where "Defendant removed those barriers, brought the Website into compliance with Plaintiff's preferred WCAG 2.0 standard, and *commits to <u>monitoring technological developments in the future </u>to ensure that visually-impaired individuals have equal access to the Website.*")(emphasis added). Mr. Petoe's statement is equally inadequate considering that a mere statement of intent to remain committed to future compliance, standing on its own, is insufficient to meet the high bar for mootness. *See Farez-Espinoza v. Napolitano*, 2009 U.S. Dist. LEXIS 35392, at *14 (S.D.N.Y. Apr. 27, 2009)("A general disclaimer of intent to revive the allegedly unlawful conduct is insufficient in itself to overcome the defendant's heavy burden.").

These deficiencies make the Kingett Decl. and Petoe Decl. unsuited for a final determination of mootness in this matter. Even setting aside the fact that Userway is ineffective, the Kingett Decl. and Petoe Decl. fail to give any of the meaningful detail that courts in this jurisdiction have required before finding that the defendant has met its high burden for mootness. They fail to explain when the Website was remediated, fail to give any expert analysis, fail to make any promises of future commitment in a meaningful way, indicate that the use of an ineffective

software overlay, Userway, and fail to explain the steps that were taken in remediating the Websites.  Moreover, the NFB has openly condemned Userway as presenting more problems than it solves, and multiple courts in this jurisdiction have rejected a similar overlay, accessiBe (also rejected by the NFB).  Finally, the Kingett Decl. and Petoe Decl. give the unmistakable impression that Defendant remediated the Website not out of a good faith effort to be in compliance with the ADA, but to avoid this litigation, putting this case squarely under the auspices of the voluntary cessation exception to mootness.

**B.  PLAINTIFF'S DIFFICULTIES IN NAVIGATING THE WEBSITE AND HER INTEREST IN RETURNING ESTABLISH INJURY-IN-FACT**

**i. Article III Standing in the Context of the ADA**

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which is rooted in the concept of standing.  *See Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131, 137 (E.D.N.Y. 2016).  In order to have standing to sue in federal court, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision."  *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009).  The injury-in-fact must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)(quoting *Lujan*, 504 U.S. at 560 n.1).  "To be 'concrete' an injury 'must actually exist': the injury must be 'real' and not 'abstract.'"  *Laufer v. Laxmi & Sons, LLC*, No. 1:19-CV-1501 (BKS/ML), 2020 U.S. Dist. LEXIS 216752, at *3-4 (N.D.N.Y. Nov. 19, 2020)(quoting *Spokeo*, 136 S. Ct. at 1548).

In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-4 (S.D.N.Y. Sep. 23, 2021)(citing cases).

### ii. **Plaintiff Has Adequately Alleged Past Injury**

Plaintiff has adequately alleged past injury. She alleges that she "encountered barriers that denied the full and equal access to Defendant's online goods, content, and services." *See* Dkt. # 1, ⁋ 20. Those barriers include Plaintiff's inability to purchase the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic," "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse," "a host of broken links" which left Plaintiff with no ability "to navigate or otherwise determine where one is on the website once a broken link is encountered." *See Id.* at ⁋⁋ 25, 26, 28, 29, 42, 43, 44. "These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do." *Id.* at ⁋ 45.

These allegations are sufficient to survive a 12(b)(1) motion. *See Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5 (finding past injury where the plaintiff

explained in a supplemental affidavit that "1) her screen-reading software was unable to discern which products were on the screen and distinguish between different screens on the website due to the failure of the website to adequately describe its content and (2) she encountered problems with broken links that prevented her from using the screen reader to return to her search."); *see also Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *26 (S.D.N.Y. Dec. 4, 2019)(past injury established where plaintiff alleged that the website's "navigation tabs were incompatible with his screen-reading software" and plaintiff was "unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software."); *see also Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *9-11 (N.D.N.Y. Aug. 10, 2022)(plaintiff adequately alleged past injury by identifying access barriers on the website in the "'Remember' and 'Compare' buttons, the cart confirmation window, and the 'Freeride' product page."); *see also Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816, at *6 (S.D.N.Y. Nov. 22, 2022)(allegations that plaintiff encountered various access barriers sufficient to establish past injury, including that "the screen reader failed to inform Plaintiff about whether a selected item had been added to her shopping cart, did not provide Plaintiff with the ability to pay for items in her cart; and failed to read various pieces of information on the website.").

Defendant briefly contests these allegations in the facts section of its memorandum of law, where Defendant asserts that these allegations are "vague." While the argument is undeveloped, Plaintiff's allegations are sufficient to survive the low pleading threshold under Rule 8. *See Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913, at *7 (S.D.N.Y. Aug. 14, 2023)("Further detail on which locations on the website are out of compliance with the applicable statutes is not necessary at this stage because a complaint need not provide

'detailed factual allegations' to survive a motion to dismiss.")(quoting *Young v. Metro. Learning Inst., Inc.*, No. 22-CV-1722 (JPO), 2023 U.S. Dist. LEXIS 23206, at \*6 (S.D.N.Y. Feb. 10, 2023); *see also Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at \*4-5 (S.D.N.Y. May 20, 2021)(concluding that general allegations of access barriers, including the website's failure to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," as well as encountering "multiple broken links," were sufficient to survive a motion to dismiss and establish past injury); *see also Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 81 (S.D.N.Y. 2022)(past injury established where plaintiff alleged that he encountered "certain difficulties" in navigating the website and specified three different dates for accessing the website).

And this is true even if Plaintiff had not alleged that he was completely prevented from using the Website. *See Brown v. Mermaid Plaza Assocs. LLC*, No. 13-cv-00760 (AMD) (CLP), 2018 U.S. Dist. LEXIS 132364, at \*18 (E.D.N.Y. Mar. 8, 2018)("Under the ADA, the barrier 'need only interfere with the plaintiffs full and equal enjoyment of the facility'—'it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way.'")(quoting *Feltenstein*, 254 F. Supp. 3d at 655). "Courts have thus found that, even where the physical or other barriers in question have not entirely prevented disabled plaintiffs from visiting or receiving services offered at a public accommodation, such that the plaintiffs can continue to visit the facility even with those barriers in place, the plaintiffs still have standing to sue under the ADA, when the barriers render their use of the facility more difficult, burdensome, or dangerous than it would be for individuals who are not disabled." *Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542, at \*13-14 (S.D.N.Y. July 5, 2023)(citation omitted)(cleaned up).

Therefore, not only are Plaintiff's "generalized" allegations that he encountered broken hyperlinks, hidden webpage elements, unannounced pop-up windows *etc.* sufficient to establish past injury under Article III, Plaintiff has gone one step further and enumerated the specific product she was prevented from purchasing as a result of those access barriers.

### iii. Plaintiff Has Established the Reasonable Inference that Discriminatory Treatment Will Continue

Plaintiff has also alleged the reasonable inference that discriminatory treatment will continue. Specifically, Plaintiff has alleged that she visited the Website on two separate occasions, October 19, 2023 and October 20, 2023, and that during her visits she encountered access barriers that Defendant has failed to rectify. *See* Dkt. # 1, ¶¶ 20, 39, 42, 45, 47. Those barriers include "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse," as well as "a host of broken links." *See Id.* at ¶¶ 43, 44. Plaintiff has also alleged that the access barriers deter her from returning to the Website. *See Id.* at ¶ 48.

Plaintiff also wants to visit the Website in the future, *if and when the Website becomes remediated*, because she wants to purchase the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic." *See* Dkt. # 1, ¶ 29. Plaintiff is interested in this product because "wanted to repair the floor in her bathroom" and was "looking for high-quality mosaic tiles appropriate for humid environments to replace the [bathroom tiles] she currently has that are moldy." *Id.* at ¶ 22. Plaintiff found the Website particularly appealing because it offers "wall and floor tiles in various materials, designs and finishes" as well as different spaces, including bathrooms, kitchens, living areas, and outdoor spaces." *Id.* at ¶ 23.

These allegations are sufficient to establish the second *Kreisler* element. *See Tavarez*, 641 F. Supp. 3d at 82 ("reasonable to infer that this discriminatory treatment will continue because

Plaintiff has visited Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *see also Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022)(reasonable to infer discriminatory treatment would continue based on allegations that the plaintiff "unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future, and that he intends to visit the site again in the future when the barriers are cured," noting that the plaintiff "even makes note of his particular interest in pistachio nuts."); *see also Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *16 (plaintiff has established that discriminatory treatment will continue by allegations that "[he] remains unable to, but strongly desires and intends to purchase the Organic Honey Sunflower Butter from Defendant's website," and that he "'browsed and attempted to transact business on Defendant's website' multiple times from April 2022 to August 2022, but the Website still contains barriers.").

Defendant argues that it is not reasonable to infer that discriminatory treatment will continue because the Website is accessible. If taken literally and broadly applied as a general rule, Defendant's arguments would introduce a *de facto* mootness requirement into the Article III standing analysis under *Kreisler*. This is highly improper. "Standing and mootness are interrelated concepts, but are not to be confused. Standing relates to whether a litigant has a personal stake at the commencement of an action, while mootness ensures that the litigant's interest exists 'throughout the life of the lawsuit.'" *Samele v. Zucker*, 324 F. Supp. 3d 313, 327 (E.D.N.Y. 2018)(quoting *Comer v. Cisneros*, 37 F. 3d 775, 797-98 (2d Cir. 2994)). Doctrinally then, Defendant's arguments conflate two very distinct concepts under the law. By doing so, Defendant evades important procedural protections under the doctrine of mootness, which places the burden squarely on the defendant to prove that a case has been mooted by subsequent actions. *Compare*

*Farez-Espinoza*, 2009 U.S. Dist. LEXIS 35392 at \*13-14 ("This responsibility on the part of the defendant to overcome the exception to the mootness doctrine has been characterized as 'stringent' and a 'formidable burden.'") *with Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022)("At all stages of litigation, the party *invoking* federal jurisdiction bears the burden of establishing the elements of Article III standing.")(emphasis added).

Therefore, Defendant's attempts to bootstrap mootness arguments onto the Article III standing analysis under *Kreisler* should be ignored. If it is to be countenanced by this Court, then Defendant's failure to overcome the voluntary cessation exception to the mootness doctrine, as established above, would suffice to show that it is reasonable to infer that discriminatory treatment will continue because, although perhaps currently remedied, the Court cannot be absolutely certain that those barriers will not reemerge in the future.

### iv. Plaintiff Has Established Intent to Return, the Third and Final *Kreisler* Element

The Complaint establishes that Plaintiff had previously visited the Website on October 19, 2023 and October 20, 2023. Dkt. # 1, ⁋ 20. The Complaint also establishes that Plaintiff is interested in visiting the Website in the future, *if and when the Website becomes remediated*, because she wants to purchase the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic." *See* Dkt. # 1, ⁋ 29. Plaintiff is interested in this product because "wanted to repair the floor in her bathroom" and was "looking for high-quality mosaic tiles appropriate for humid environments to replace the [bathroom tiles] she currently has that are moldy." *Id.* at ⁋ 22. Plaintiff found the Website particularly appealing because it offers "wall and floor tiles in various materials, designs and finishes" as well as different spaces, including bathrooms, kitchens, living areas, and outdoor spaces." *Id.* at ⁋ 23.

These allegations are consistent with caselaw that has found intent to return in the context of ADA website claims. *See Tavarez*, 641 F. Supp. 3d at 83 (finding that the amended complaint

sufficiently alleged intent to return at the motion to dismiss stage because it "specifies three dates on which Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of Defendant's Almond Mini Bars that he finds attractive."); *see also Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *5 (plaintiff adequately pleaded intent to return where plaintiff alleged that he "unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future, and that he intends to visit the site again in the future when the barriers are cured," where the plaintiff "makes note of his particular interest in pistachio nuts" and websites themselves "are already easily accessible at any moment."); *see also Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *5 (intent to return established where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies and is interested in Defendant's products because they are free of chemicals and other unnatural ingredients."); *see also Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6-7 (S.D.N.Y. Mar. 6, 2023)(finding intent to return adequately pled where "Plaintiff has alleged the specific product he intended to purchase—a T-shirt … where Defendant is an apparel retailer and where Plaintiff alleges that he was unable to navigate Defendant's website so that he could properly browse for a specific T-shirt and complete his purchase."); *see also Chalas*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816 at *8-9 (finding that the plaintiff adequately pled injury-in-fact based on an alleged interest in stomach repair supplements for her cousin and a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *see also Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-20 (finding intent-to-return where the plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a

healthy and tasty new food," and where the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *see also Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503, at *13-14 (S.D.N.Y. July 5, 2023)(finding intent-to-return where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers a specific oil, the Morroccanoil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.").

Focusing on a single line in the Complaint, *see* Dkt. # 1, ¶ 46, Defendant argues that Plaintiff's allegation that she "intends to visit the website in the near future if it is made accessible" is insufficient to establish intent to return. Defendant cites to *Calcano*, 36 F.4th at 75 ("The central inquiry is not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury."). Plaintiff has done far more than simply made a bald allegation about returning to the Website, but has established the product she is interested in purchasing and why, and gone further to explain why the Website's offerings are particularly appealing to her. The totality of all relevant facts, when considering the *entire* Complaint, supports standing.

Defendant also makes various different interrelated arguments to the effect that Plaintiff has not alleged why she is interested in the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic;" that she has not "articulated" her interest in the tiles; and that Plaintiff has not alleged the factual basis for her interest in the tiles. These arguments are belied by the allegations of the Complaint. Plaintiff is interested in purchasing the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic" because she "wanted to repair the floor in her bathroom" and

was "looking for high-quality mosaic tiles appropriate for humid environments to replace the [bathroom tiles] she currently has that are moldy." *Id.* at ❡ 22. Plaintiff further explains the reasons for her interest in the Website in particular. *Id.* at ❡ 23. Under the totality of relevant facts, it is clear that Plaintiff has alleged why she is interested in the "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic." Her allegations are more than just bald statements to that effect.

Defendant nevertheless takes issue with these allegations and suggests that the basis for her interest in the tiles *is not differentiated enough*. Defendant asks why Plaintiff could not seek out similar tiles elsewhere. But if courts can find intent to return based on a plaintiff's "particular interest in pistachio nuts," *see Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *7; a plaintiff's interest in "honeyed butter" where the plaintiff alleges he "is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food," *see Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-20; a plaintiff's interest in stomach repair supplements for her cousin, *see Chalas*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816 at *8-9; a plaintiff's interest in "Morroccanoil Dry Body Oil," where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands" and "wants to add [the Morroccanoil Dry Body Oil] to her collection," *see Maddy*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 at *13-14; a plaintiff's interest in "in Defendant's products because they are free of chemicals and other unnatural ingredients," where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies," *see Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *5; and a plaintiff's alleged interest in "the specific product Plaintiff allegedly seeks to buy," where the plaintiff alleges nothing more than "his habit of consuming chocolate, and characteristics of

Defendant's Almond Mini Bars that he finds attractive," *see Tavarez*, 641 F. Supp. 3d at 83, there is no reason why this Court cannot do the same here. In terms of specificity, Plaintiff's allegations are nearly identical to these in that they identify the product, "Ehysquare White Whisp Dolomiti Ultra Premium - Carrara Claro Light - Honed Visual Dimensions Marble Mosaic," and specify the reasons for wanting the product (to replace moldy bathroom tiles with tiles that are amenable to humid environments). *See* Dkt. # 1, ⁋ 22.

Defendant's insistence on even more detail – based on a seemingly endless of array of personal-life details that seem better suited to the vows of marriage than an online retail purchase – belies the realities of the online marketplace. Under Defendant's proposed standard, *no* plaintiff would ever be able to establish standing based on a desire to purchase something online. *Sanchez*, *Davis*, *Chalas*, *Maddy*, *Angeles* and *Tavarez* directly refute that contention.

Moreover, Plaintiff's intent to return is plausible considering the two prior dates Plaintiff visited the Website. *See Tavarez*, 641 F. Supp. 3d at 83 (finding intent to return based, in part, on three prior dates plaintiff allegedly visited the website); *see also Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-19 (finding intent to return based, in part, on allegations of visiting the Website on five prior occasions); *see also Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4 (finding intent to return, in part, where "Plaintiff provides approximate date of when she attempted to access the website, *i.e.*, sometime in October of 2020.").

In this respect, *Winegard v. Golftec Intellectual Prop. LLC*, No. 23-cv-1244 (BMC), 2023 U.S. Dist. LEXIS 92840 (E.D.N.Y. May 26, 2023), which Defendant relies on, is distinguishable. That case held that the plaintiff failed to plausibly allege intent to return to the defendant's website for the purpose of viewing golf instructional videos because he failed to allege any background facts that would make his interest in the website plausible, such as past lessons taken, courses

played, *etc.* *See Winegard*, No. 23-cv-1244 (BMC), 2023 U.S. Dist. LEXIS 92840 at *7-8. The plaintiff, however, alleged only a single date that he had previously visited the Website, and the court struggled to draw any favorable inferences of other past visits based on vague and conclusory allegations to that effect. *See Winegard*, No. 23-cv-1244 (BMC), 2023 U.S. Dist. LEXIS 92840 at *7 (noting that the plaintiff "only visited defendants' website on February 6, ten days before filing this lawsuit, and the "claim that he also visited on 'subsequent days' is not particularized enough to be plausible.").

Defendant also relies on *Dawkins v. Schott NYC Corp.*, No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 (E.D.N.Y. Sep. 26, 2023) to argue that Plaintiff's allegations are not plausible. In *Dawkins*, the court held that the plaintiff's averments that he was interested in a "classic perfecto" jacket for its iconic look failed to "'nudge' the Complaint 'across the line from conceivable to plausible'" because he did not allege "the genesis of his sudden need or want" or make any allegations concerning the uniqueness of the product or his attempts to find suitable alternatives "at a comparable price point." *Dawkins*, No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 at *8-9. This case is distinguishable because Plaintiff has articulated the basis for her "sudden need or want." She is searching for tiles to replace moldy bathroom tiles with tiles that are amenable to humid environments. *See* Dkt. # 1, ¶ 22.

Moreover, Defendant's assertions that Plaintiff's allegations in this respect are no different from the ones in *Dawkins*, which the court found merely to be "value assertions," is a mischaracterization of that case. The *Dawkins* court came to that conclusion because the plaintiff had opined about the broad-based appeal of the "classic perfecto jacket" in American culture, but without any allegations to that effect. No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 at *9 ("[T]hese statements are not factual allegations about Plaintiff's own experiences or

intent, but are allegations about the theoretical desirability of Defendant's products by the public in general. A plaintiff cannot manufacture standing through such generalized, non-concrete allegations."). Here, Plaintiff has alleged the basis for her interest in the tiles.

Defendant's attempt to turn the reasoning of *Dawkins* into a bright line rule requiring all ADA plaintiffs to allege with specificity that they had tried and failed to find suitable alternatives at a comparable price point does not withstand scrutiny. *Dawkins* only came to that conclusion, much like Judge Cogan did in *Winegard* when musing about allegations that could possibly fill the void, in an attempt to explain what allegations might satisfy the Article III threshold. *See Dawkins*, No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 at *8-9; *see also Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items from the defendants.")(emphasis in original). These alternatives are not a laundry list of requirements offered in the conjunctive, but alternatives suggested as possible pathways to establish standing. Defendant's bright-line rulemaking would turn these alternative ways of satisfying Article III into a "choose your own adventure" playbook where any district court might dismiss a claim that had not met these exceedingly finite criteria. Article III is not so strict.

Defendant also argues that Plaintiff's allegations cannot be credited because she is a serial litigant, and relies heavily on *Calcano* for this assertion. But *Calcano* is distinguishable. The Second Circuit rejected standing there because the complaints (consolidated for purposes of appeal) were so riddled with "errors, oddities and omissions" – errors that went to the heart of the plaintiffs' intent to return – that the Circuit Court struggled with the veracity of the allegations. *See Calcano*, 36 F.4th at 77 (reasoning that the "Mad-Libs-style complaints further confirms the

implausibility of their claims of injury," and noting, as examples, that "Murphy asserts that he would return to a Kohl's that doesn't exist" and "Dominguez seeks to go back to Banana Republic for its food."). Coupled with the boilerplate nature of the complaints and the fact that hundreds of such complaints had been filed, the Circuit Court refused to find standing. *See* 36 F.4th at 76-77.

Courts in this jurisdiction have distinguished *Calcano* precisely along these lines. *See Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-20 (rejecting the defendant's reliance on *Calcano* "as the plaintiffs 'offered only "naked assertions'" of intent to return to [d]efendants' stores if they offer braille gift cards," whereas, "[h]ere, the allegations concerning intent to return are significantly more detailed … .")(quoting *Calcano*, 36 F.4th at 77-78); *see also Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items from the defendants.")(emphasis in original)(quoting *Calcano*, 36 F.4th at 76-77).

Defendant points to no error in the Complaint, or any of the other ADA claims Plaintiff has filed with this firm, that so troubled the Second Circuit. To the extent that such errors exist, they do not go to the heart of Plaintiff's intent to return to these websites, as was the case in *Calcano*. Aside from the boilerplate nature of the Complaint – a daily fact of life for most plaintiff firms, whether they bring personal injury claims or intellectual property claims such as copyright infringement – Defendant has failed to point to any other aspect of *Calcano* that would call into question the veracity of Plaintiff's allegations.

Moreover, the fact that serial plaintiffs file dozens of these complaints reflects the widespread discrimination that the visually impaired face on a daily basis and the ubiquitous nature of the internet itself. *See Maddy*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 at *15-

16 (filing over 70 complaints did not make the plaintiff's intent to return implausible, reasoning, "It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons[,]" thus "reflect[ing] the systematic issues that visually impaired consumers face on a daily basis…"); *see also Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *10-11 ("The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites.").

## C. **PLAINTIFF'S NYCHRL CLAIMS SURVIVE**

Even if Plaintiff's ADA claims are dismissed, NYCHRL claims are judged by a different standard and survive. *See Pustilnik v. Battery Park City Auth.*, 2021 NY Slip Op 21087, 71 Misc. 3d 1058, 1069, 147 N.Y.S.3d 357 (Sup. Ct.)("It is undisputed that the NYCHRL's pleading standards are materially looser than the trans-substantive plausibility standard of the Federal Rules of Civil Procedure—or, for that matter, the CPLR's notice-pleading standard for claims under the NYSHRL."); *see also Cabrera v. City of N.Y.*, 2014 NY Slip Op 30533(U), at *6-7 (Sup. Ct.).

## V. **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.

Dated: January 26, 2024                    Respectfully Submitted,

                                           **STEIN SAKS, PLLC**

                                           */s/ Kenneth Willard*

                                           Kenneth Willard, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Kenneth Willard*_____

Kenneth Willard, Esq.